UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LARRY B. KECK, and
KECK TECHNOLOGIES, LLC,
a Florida Limited Liability Corporation,

      Plaintiffs,

v.                            Case No: 6:10-cv-548-18DAB

ALION SCIENCE AND TECHNOLOGY
CORPORATION, a Virginia Corporation,
ROBERT SCHER, and
WEIMIN HU,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES WITH INJUNCTIVE RELIEF SOUGHT AND DEMAND FOR JURY TRIAL

Plaintiffs, Larry B. Keck and Keck Technologies, LLC, sue Defendant Alion Science and Technology Corporation, Robert Scher, and Weimin Hu, and, in support thereof, allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Larry B. Keck, an individual, is a citizen of Florida at all time material to this action.

2.      Plaintiff, Keck Technologies, LLC is a Florida Limited Liability Corporation.

3.      Defendant Alion Science and Technology Corporation is a Virginia corporation, having its principal place of business at 4300 King Street, Alexandria, Virginia, 22302.

4.      Defendant Robert Scher is a resident of Annandale, Virginia.  Defendant Scher is

an employee of Defendant Alion.

   5.    Defendant Weimin Hu is a resident of Rockville, MD.  Defendant Hu is also an

employee of Defendant Alion.

   6.    Jurisdiction is proper in this Court based on the following grounds:

      a.  Count I seeks injunctive relief regarding an invention owned by Plaintiffs

         which Defendants misappropriated, and which Defendants improperly applied

         for a patent thereon before the United States Patent and Trademark Office

         ("USPTO").  This Court has jurisdiction pursuant to 28 U.S.C. Section 2201

         and 35 U.S.C. Section 283.

      b.  Count II seeks declaratory relief to affirm true inventorship and ownership of

         an invention originally created by Plaintiff Larry B. Keck and now owned by

         Plaintiff  Keck  Technologies,  LLC,  which  Defendants  attempt  to

         misappropriate by improper procurement of patent rights, in that Defendants

         via illegal means applied to the USPTO for a patent on Plaintiff's invention.

         This Court has jurisdiction pursuant to 28 U.S.C. Section 2201 and 35 U.S.C.

         Section 256.

      c.  Count III seeks damages for breach of contract; Count IV seeks damages for

         misappropriation of trade secrets under Section 688.001, *et seq.*, Florida

         Statutes;  Count  V  seeks  damages  for  fraud  and  deceit;  Count  VI  seeks

         damages for civil conspiracy; Count VII seeks damages for violations under

         Florida's RICO Statute, Section 772, *et seq.*, Florida Statutes; Count VIII

         seeks damages for violations under Florida's Deceptive and Unfair Trade

         Practices Act, Sections 501.201, *et seq.*, Florida Statutes; Count IX seeks

2

damages for conversion; and Count X seeks damages for unjust enrichment. This Court has jurisdiction of these claims pursuant to 28 U.S.C. Section 1331 in that, as set forth above, Counts I and II are issues of federal law.  This Court also has jurisdiction of these counts pursuant to 28 U.S.C. Section 1332 in that the matter in controversy exceeds $75,000.00 exclusive of interest and cost and the matter in controversy is between a citizen of this state and a citizen of a foreign state.

7.     Venue is proper in the U.S. District Court, Middle District of Florida, under 28 U.S.C. Sections 1391(2) in that a substantial part of the events and omissions giving rise to the claims occurred in the Middle District and a substantial part of property that is the subject of the action is situated in the Middle District, including, but not limited to, the fact that the intellectual property, later misappropriated by Defendants, was acquired by Defendants in the Middle District; Defendants misappropriated, converted and stole Plaintiffs' trade secrets located in the Middle District; Defendants made numerous fraudulent misrepresentations and engaged in other deceitful conduct while Plaintiffs were residing in the Middle District; and the parties executed an agreement material to this action in Middle District which required performance in the Middle District.

## GENERAL ALLEGATIONS

*A.*
*Defendants' Illegal Acts Relating To Plaintiffs' SeaTrain Invention*

8.     During the period between approximately September 2002 and April 2005, Plaintiff Larry Keck invented, designed, and otherwise created the entire invention and all concepts, designs, intellectual property and trade secrets relating to a design of a ship, as fully

3

disclosed and claimed in multiple United States patent applications, including Serial Nos. 11/548,472 and 12/060,736, which name Larry Keck as sole inventor. The invention is referred to as the "SeaTrain" design, such that any ship built in accord with the designs disclosed in Serial Nos. 11/548,472 and 12/060,736 is referred to as a SeaTrain. The numerous inventive embodiments of the SeaTrain design which are solely the invention of Larry Keck and all related intellectual property, including trade secrets relating to the SeaTrain, are collectively referred to herein as the "SeaTrain Invention." By way of example, Larry Keck is the *sole* and exclusive inventor of the SeaTrain Invention as claimed in the U.S. patent applications Serial Nos. 11/548,472 and 12/060,736. Keck Technologies also holds exclusive rights in international patent applications on the SeaTrain Invention which patent applications have been filed at considerable cost in Asia, Europe and Australia.

9.     The SeaTrain consists of several ship-like units connected like the cars of a train. Each car has a pair of side hulls which form a cavity under the cars. In numerous embodiments the cavity extends from car to car by connecting the cars with air seals, and the hulls can be raised up in the water with lift fans. The fans blow air in a downward direction through the decks of the cars and into the cavity to create an air cushion. The air seals help confine the air underneath each of the cars by forming seals around the perimeters of the hulls and along the joints between the cars. Importantly, with these seals the air cushion extends underneath the *entire* length of the train, and along the *joints* connecting the cars.

10.     The advantages of the SeaTrain invention and design include, among other things, high speed and fuel-efficient transportation over water.

11.     Prior to July 7, 2004, Plaintiff Larry Keck (DBA "Kech Technology") created all necessary concepts needed to enable one skilled in the art to practice his invention, i.e., build a

SeaTrain.  At the time of the invention, Larry Kech was both the sole inventor and sole and exclusive owner of the SeaTrain Invention.  Effective August 19, 2005, Larry Keck transferred all ownership, interests and rights in the SeaTrain Invention to his LLC, Plaintiff Keck Technologies, LLC.  Plaintiff Larry Keck has always been the sole principal, member, officer and director of Plaintiff Keck Technologies, LLC.  Accordingly, since it was invented, the SeaTrain Invention has only been owned by Plaintiffs, and no other parties, including Defendants, have ever had any ownership rights in the SeaTrain Invention.

12.     In July 2004, Plaintiff Larry Keck first entered into substantive discussions with Alion[1] and the SeaTrain invention was thereby and subsequently disclosed to employees of Alion, including to Defendants Scher and Hu.  Based upon these disclosures, Defendants evaluated the performance characteristics and feasibility of Keck's SeaTrain Invention. Defendant Alion fully understood that Larry Keck only agreed to disclose the SeaTrain Invention to Defendants under strict and secure terms of a non-disclosure agreement, providing other measures protecting his inventorship and ownership rights.

13.     Accordingly, on or about July 7, 2004, before disclosing the SeaTrain Invention (or any other intellectual property and/or trade secrets) to Defendants, Keck required Defendant Alion[2] to execute a Non-Disclosure Agreement ("Non-Disclosure Agreement").  A true and accurate copy of the Non-Disclosure Agreement is attached hereto as **Exhibit A.**  The Non-Disclosure Agreement was executed in the Middle District of Florida by both James Amerault (on behalf of Alion) and Larry Keck, and the SeaTrain Invention was first disclosed to Alion at a

---

[1] Plaintiffs initially entered into discussions with J.J. McMullen & Associates, LLC.  During 2005 Defendant Alion purchased J.J. McMullen, LLC.

[2] Plaintiffs initially executed the Non-Disclosure Agreement with J.J. McMullen & Associates, LLC. When Alion purchased J.J. McMullen, the entire LLC entity, during 2005, all duties, obligations, and liabilities J.J.

meeting in the Middle District of Florida.  Importantly, the Non-Disclosure Agreement provides that Defendants may only use information describing the SeaTrain Invention for the limited and purpose of "evaluating performance characteristics and feasibility of Keck Tech's [the DBA of Plaintiff Larry Keck, individually] designs, methods and approaches" relating to the SeaTrain Invention. Based on representations made to Plaintiff Larry Keck in the Middle District of Florida, Larry Keck was induced to provide further confidential and proprietary information to Alion which resulted in missapropriations of confidential and proprietary information owned by Plaintiffs.

14.     In addition to the Non-Disclosure Agreement, Plaintiff Larry Keck took all reasonable security measures and precautions to prevent unauthorized disclosure of the SeaTrain Invention, including, but not limited to coordination with Alion to enter into multi-party non-disclosure agreements before Alion was permitted to disclose information describing the SeaTrain Invention to other parties during 2007.  Little did Plaintiffs know that at that time Alion had already taken steps to misappropriate the SeaTrain Inventions.

15.     From approximately January 2005 to September 2008, Plaintiffs and Defendants worked together on various projects to develop and evaluate SeaTrain vessels.  Under these projects, Defendant Alion entered into several contracts with the U.S. Navy in which Plaintiffs and Alion were paid by the U.S. Navy to evaluate the SeaTrain Invention.  Efforts included building prototype ships and performing evaluations of these ships.

16.     On or about January 14, 2010, Plaintiffs were shocked to discover that one or more of the Defendants, including Alion, had *fraudulently* and otherwise illegally prepared, filed, or otherwise communicated a fraudulent patent application with the USPTO, Serial No.

---

McMullen had under the Non-Disclosure Agreement transferred to Defendant Alion.

11,647,581 on 29 December 2006 (the "Fraudulent Patent Application") on the SeaTrain Invention. The Fraudulent Patent Application was based upon provisional patent application No. 60/860,479, which was filed by Defendant Alion on November 22, 2006, less than two weeks after Larry Keck explained to Alion management: (1) that he could not agree with making Alion employees co-inventors in his patent application Serial No. 11/548,472, filed 6 October 2006 (now U.S. Patent No. 7,685,954) in exchange for funding of the patent process by Alion because no material advances had resulted from the efforts of Alion employees that would justify co-inventor status in that now-issued patent; and (2) that Larry Keck would agree to provide Alion with a conventional license. Under Defendants' Fraudulent Patent Application, Defendants, among other things:

    a.  Misappropriated the SeaTrain Invention by incorporating inventive features of the SeaTrain Invention which at the time were proprietary information of the Plaintiffs as invented by Plaintiff Larry Keck, thereby potentially placing validity of Plaintiff's patent rights in jeopardy.

    b.  Fraudulently represented that Defendant Scher and Defendant Hu were the "inventors" of the SeaTrain Invention as defined in multiple ones of the claims filed and so far examined by the USPTO in Serial No. 11/647,581, and that Defendant Alion was the "assignee" of rights in the SeaTrain Invention in accord with multiple ones of the claims filed in Serial No. 11/647,581.

    c.  Disclosed and claimed subject matter as though solely owned by Defendant Alion and solely invented by Scher and Hu, which same subject matter constitutes improvements to the SeaTrain Invention[3] for which Plaintiff Larry

---

[3] Plaintiffs have, with prior authorization and full knowledge of Defendants, filed U.S. Patent Application

Keck is at least a co-inventor and in which Keck Technologies has an ownership interest and which improvements, as derivatives of information received under the Non-Disclosure Agreement, Alion was not permitted to file a patent application thereon under the terms of the Non-Disclosure Agreement.

d. Caused publication of Plaintiff's confidential and proprietary information describing the SeaTrain Invention by allowing the Serial No. 11/647,581 to be published on May 22, 2008, thereby placing in jeopardy the patentability of inventions relating to the SeaTrain in foreign countries and placing in jeopardy the validity of Plaintiff's patent rights in foreign countries.

17.     Plaintiffs also discovered that Defendants had defrauded Plaintiffs by inducing Plaintiffs to allow Defendants to retain and use Plaintiffs' proprietary and confidential information under an appearance of legitimacy, while Defendants were fraudulently misappropriating, stealing and/or illegally using the SeaTrain Invention and while concealing Defendants' misappropriation, theft and improper use of the SeaTrain Invention, including, but not limited to:

a. Defendant Alion having induced Larry Keck to provide detailed confidential and proprietary information at one or more meetings in Atlantic Beach, Florida, some of which provided a basis for the text and figures in the Fraudulent Patent Application.

b. Defendant Alion having had numerous communications exchanges with Larry Keck at Larry Keck's office or residence in Florida and having induced Larry

---

12/061,306 naming Keck, Scher and Hu as co-inventors.

Keck to provide similar and further information, including documentation, some of which provided a basis for the text and figures in the Fraudulent Patent Application.

c. Defendants having used the confidential and proprietary information as a basis to file the Fraudulent Patent Application which was then published by the USPTO.

d. During 2006 and 2007, Defendant Alion creating an appearance, or making numerous false statements, that it was fully aware of and abiding by its responsibilities of protecting Plaintiff's confidential and proprietary information provided under the Non-Disclosure Agreement, including, but not limited to working with Plaintiffs to enter into multi-party non-disclosure agreements so that any disclosure of Plaintiffs' confidential and proprietary information would be held in confidence, and by expressly crediting Larry Keck as the inventor of the SeaTrain Invention in numerous publications.

e. Defendants repeatedly misled Plaintiffs by entering in various sham business negotiations with Plaintiffs, encouraging Plaintiffs to prepare agreements it never intended to execute; discussing joint development, joint ventures and technology transfer; and marketing and commercialization of the SeaTrain Invention.

18. Defendants have been repeatedly made aware of Plaintiffs' position that Larry Keck is the inventor of the SeaTrain Invention and Defendants have acknowledged such in numerous publications. On multiple occasions during January and February of 2010, Defendants were notified that the Fraudulent Patent Application is error which must be corrected and,

despite such, Defendants have refused to comply with Plaintiffs, but continue to seek issuance of the Fraudulent Patent Application.

19.     As a direct and proximate result of Defendants' improper conduct described above (including the Fraudulent Patent Application and misappropriation of the SeaTrain Invention), Plaintiffs have suffered and will continue to suffer damages (including irreparable injuries) in the form of lost goodwill, lost profits, lost business opportunities, lost competitive advantages, confusion in their industry, and other damages.   In addition, Defendants have significantly and irreparably damaged the value of Plaintiffs' Intellectual Property Rights in SeaTrain Invention, and all other intellectual property, trade secrets, and proprietary information belonging to Plaintiffs, which Plaintiffs developed through their investment of time, effort, and money.   In addition, as a direct and proximate result of Defendants' improper conduct, Defendants have been unjustly enriched.

*B.*
*Defendants' Illegal Acts Relating To The SESACV Invention*

20.     Prior to October 2005 Plaintiff Larry Keck invented, designed, and otherwise created the entire invention and all concepts, designs, intellectual property and trade secrets relating to a design of a ship referred to herein as the "SESACV."   The numerous inventive embodiments of the SESACV design and all related intellectual property, including trade secrets relating to the SESACV, are collectively referred to herein as the "SESACV Invention."[4]   The SESACV Invention, among other features, integrates principles of a Surface Effect Ship (SES) with an Air Cushion Vehicle (ACV) to enable one vehicle to provide both (1) rapid, efficient

---

[4] The SESACV is referred to at page 1 in the Non-Disclosure Agreement as part of Keck Tech's "research and design efforts of Air Cushion Catamarans (ACC's) and Hovercraft ..."

transit over open water and (2) an ability to traverse marshlands, beaches and surfaces wherein the vessel has zero draft. A feature of the SESACV is the incorporation of flexible fabric side air skirts which are deployed from the craft's catamaran side hulls. This design enables a Surface Effect Ship (SES) to transform into an Air Cushion Vehicle, or ACV, to allow cargo to be loaded or unloaded directly onto land. Larry Keck is the original and *sole* inventor of the SESACV Invention, e.g., a vehicle providing high speed and fuel-efficient transportation over water and movement over flat, unobstructed land such as a beach or a marsh.

21.     Prior to October 2005, Plaintiff Larry Keck created all necessary concepts needed to enable one skilled in the art to practice his invention, i.e., build an SESACV Invention. At the time of the invention, Larry Keck was both the originator and sole inventor and exclusive owner of the proprietary concepts which define the SESACV Invention. The SESACV Invention has only been owned by Plaintiffs, and no other parties, including Defendant Alion, have ever had any ownership rights in the SESACV Invention.

22.     Like the SeaTrain Invention, Plaintiff Larry Keck entered into discussions with Alion[5] in 2005 in which the SESACV Invention was disclosed to employees of Defendant Alion, including Defendant Scher or Hu. Based on these disclosures, Defendants collaborated with Larry Keck to further develop concepts based on the SESACV Invention and expressed interest to Larry Keck in continued collaboration. There had been discussions about evaluating the performance characteristics and feasibility of Keck's SESACV Invention or derivatives thereof, and continued collaboration to prepare a government proposal concerning a T-Craft project based on the SESACV Invention or a derivative thereof. Then, without prior notice to Larry

---

[5] Plaintiffs initially entered into discussions with J.J. McMullen & Associates, LLC. Defendant Alion purchased J.J. McMullen, the entire LLC entity, during 2005.

Keck, Larry Keck was advised on or about November 10, 2006 that, based on direction received from Mr. Mark Redmond of Alion, Larry Keck would no longer be involved in such collaboaration for the T-Craft project, allegedly because it did not involve the SeaTrain.

23. As with the disclosure of Larry Keck's SeaTrain Invention, the parties fully understood and agreed that Larry Keck would only disclose his SESACV Invention to Defendants under a non-disclosure agreement, requiring measures protecting Larry Keck's inventorship and ownership rights in the SESACV Invention and related trade secrets. Accordingly, Larry Keck only disclosed the SESACV Invention to Alion *after* the parties executed the July 7, 2004 Non-Disclosure Agreement, which also protected his SeaTrain Invention. *See* **Exhibit A,** attached. Just like the SeaTrain Invention, the Non-Disclosure Agreement provides that Defendants may only use the SESACV Invention for the limited and narrow scope of "evaluating performance characteristics and feasibility of Keck Tech's [the DBA of Plaintiff Larry Keck, individually] designs, methods and approaches" relating to the SESACV Invention.

24. In addition to the Non-Disclosure Agreement, Plaintiff Larry Keck took all reasonable security measures and precautions to prevent unauthorized disclosure of the SESACV Invention. During the period beginning in 2005 and ending prior to November 10, 2006, Plaintiffs and Defendants collaborated or otherwise worked together to develop and evaluate SESACV-related vessels based on disclosure of the SESACV Invention by Larry Keck to Alion.

25. During March 2010, after discovering Defendants' misappropriation of the SeaTrain Invention, Plaintiffs were shocked to *also* discover that Defendants stole, misappropriated, and/or otherwise illegally misused the SESACV Invention and related trade secrets, including, but not limited to the aforementioned key concept wherein flexible fabric side

air skirts are deployed from the crafts catamaran side hulls.  Apparently, despite having advised Larry Keck on November 10, 2005 that Larry Keck would no longer be involved in collaboaration for the T-Craft project, Alion continued to use, without any knowledge of or authorization by Larry Keck to do so, the SESACV Invention or a derivative thereof in preparing a proposal for the T-Craft project or performing under a contract concerning the T-Craft project. One or more of the Defendants are aware that technology development efforts of Alion for the T-Craft program have been based on the SESACV Invention as disclosed to Alion by Larry Keck prior to November 10, 2006.

26.     In addition, Defendants fraudulently concealed their actions of misappropriating the SESACV Invention, knowing full well that unless and until the U.S. Government released details of Defendant Alion's work under the T-Craft project, there would be no way for Plaintiff to know that Defendants had misappropriated his SESACV Invention.  Had Larry Keck known of this use he would have filed a patent application on the SESACV Invention and Larry Keck has been harmed because he has lost patent rights which would have been secured during 2006 if Alion had been forthright about its intentions.

27.     As a direct and proximate result of Defendants' improper conduct described above, Plaintiffs have suffered and will continue to suffer damages (including irreparable injuries) in the form of lost goodwill, lost profits, lost business opportunities, lost competitive advantages, confusion in their industry, and other damages.  In addition, Defendants have significantly and irreparably damaged the value of Plaintiffs' intellectual property rights in the SESACV Invention.  For example, any development work performed under contract to the U.S. Government may provide the government with a royalty-free license in the SESACV Invention

which Plaintiff Larry Keck has independently developed. In addition, as a direct and proximate result of Defendants' improper conduct, Defendants have been unjustly enriched.

*C.*
*Simulation and Design Tools pertaining to*
*The SeaTrain Invention and/or SESACV Invention*

28.     The irreparable injury to Plaintiffs based upon the misappropriation of the SeaTrain Invention, SESACV Invention and related trade secret information, described above, is rendered more likely and damaging given the steps Defendants have taken in preparation of the design and manufacture of vessels based upon these inventions and trade secrets. During 2005 and 2006, after Larry Keck provided confidential and proprietary information describing the SeaTrain Invention, SESACV Invention and related trade secret information to Defendant Alion, Defendant Alion and Plaintiffs cooperatively sought federal funding to evaluate these concepts. In fact, based upon Larry Keck's disclosure to Alion of these inventions and trade secrets, Alion was successful in receiving contract awards under a multi-phase development program funded by the United States Navy (ONR Contract No. N00014-05-C-0347), hereafter referred to as the Development Program.   At that time, under the terms of the Non-Disclosure Agreement, Defendant Alion was permitted to use such information solely for the purpose of evaluating the performance characteristics and feasibility of Keck Tech's designs, methods and approaches. It was under these terms that Alion was performing permissible work under the Development Program.   In conjunction with performing such work under the Development Program, Defendant Alion developed a series of simulation programs describing specific features relating to the SeaTrain (the "Simulation and Design Tools"). The Simulation and Design Tools are absolutely essential to manufacturing the SeaTrain in 2005, rain vessels SESACV vessels and

other SES vessels -- and have no other function or purpose.  Importantly, Alion has used, vessels under one or more development contracts and and is likely to use the Simulation and Design Tools to design or manufacture military and commercial maritime vessels based upon the SeaTrain Invention and/or SESACV Invention.

29.     But for Larry Keck disclosing the SeaTrain Invention and/or SESACV Invention to Alion, Alion would have had no reason to develop, and would not have developed, the Simulation and Design Tools.  But for disclosure of the SeaTrain Invention and/or the SESACV Invention, Defendant Alion would not have derived economic benefit from the Simulation and Design Tools.  Defendant Alion is very likely to derive further economic benefit from use of the Simulation and Design Tools in relation to other funded research and development (including, possibly, the T-Craft Project) and through future design of SES vessels or ACV's for government and non-governmental customers.

30.     Defendants' misappropriation of Plaintiffs' intellectual property, including the SeaTrain Invention and the SESACV Invention, has caused and continues to cause irreparable harm and damage to Plaintiffs.  As evidence of such, Paragraph 12 of the Non-Disclosure Agreement confirms that Defendant Alion has agreed that Plaintiff Larry Keck's rights which should have been protected are of a character such that breach of any provision of the Non-Disclosure Agreement causes irreparable injury and damage to Larry Keck, the non-breaching party, and that Larry Keck is entitled (i) to require specific performance of all of the acts and the undertakings required of the breaching party, and (ii) to obtain injunctive relief and other equitable relief, to prevent violations or threatened violations.

31.     In view of Defendant Alion's past and continuing efforts to usurp and/or misappropriate Plaintiffs' Intellectual Property, and in view of the fact that the misappropriations

were concealed from Plaintiffs until January 2010 or later, Defendants would continue to derive

unjust benefit if they were to have free and continued use of the Simulation and Design Tools

which enable Defendants to derive further benefit from the misappropriation.

        32.    Therefore Alion should not be permitted to continue using any of the

misappropriated intellectual property as it relates to the SeaTrain Invention and the SESACV

Invention, including the Development Program and the T-Craft Project.

        33.    All conditions precedent necessary to bring this action have been performed, have

occurred or have been waived.


## COUNT I:
### Permanent and Preliminary Injunction
### Against All Defendants Regarding The SeaTrain Invention And The SESACV Invention

        34.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1

through 33, above.

        35.    This is an action for permanent and preliminary injunctive relief against all

Defendants.

        36.    As stated above, Defendants have engaged in various fraudulent, deceitful, illegal

and otherwise improper acts, including, but not limited to: i) the preparation, filing and

communication of the Fraudulent Patent Application regarding the SeaTrain and related trade

secrets; and ii) improperly and illegally misappropriating, stealing, retaining possession of,

confiscating, using and disclosing the SeaTrain and SESACV Inventions and related intellectual

property, trade secrets, and proprietary information belonging to Plaintiffs.

        37.    Plaintiffs will suffer irreparable harm if Defendants are not enjoined from

engaging in the foregoing acts.

38.     Plaintiffs have no adequate remedy at law because Defendants are continuing to act illegally and damages alone will not adequately compensate Plaintiff.

39.     Plaintiffs have a clear legal right to the relief requested and an injunction is in the public's interest.

WHEREFORE,  Plaintiff  respectfully  requests  that  this  Court  grant  temporary, preliminary, and permanent injunctive relief against Defendants, including, but not limited to:

    a.  Ordering  the  Defendants  to  immediately  cease  and  stay  any  further processing,  approval,  work,  and  consideration  of  the  Fraudulent  Patent Application Serial No. 11,647,581 until further order of this Court or, in the alternative, ordering the Defendants to authorize Plaintiffs, on their behalf, to immediately  cease  and  stay  any  further  processing,  approval,  work,  and consideration of the Fraudulent Patent Application Serial No. 11,647,581 until further order of this Court.

    b.  Requiring Defendants to immediately cease and desist any further activities relating to Fraudulent Patent Application Serial No. 11,647,581.

    c.  Requiring  Defendants  to  immediately  withdraw  the  Fraudulent  Patent Application Serial No. 11,647,581 from issue as a United States Patent.

    d.  Requiring Defendants to immediately cease and desist using both the SeaTrain Invention  and  the  SESACV  Invention  in  any  manner,  including  using  the Simulation  and  Design  Tools  to  design  or  manufacture  military  and commercial maritime vessels based upon the SeaTrain Invention and/or the SESACV Invention.

e. Requiring Defendants to pay to Larry Keck all profits made in connection with development or use of the SESACV invention including net earnings received as a result of government funded development of designs based in whole or part on the SESACV Invention.

**COUNT II:**
**Declaratory Relief and Judgment**
**Against All Defendants Regarding The SeaTrain Invention**

40.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 33, above.

41.     This is an action against Defendants for declaratory relief seeking a declaratory judgment, order and/or adjudication from this Honorable Court, as set forth below.

42.     As set forth above, Plaintiff Larry Keck is the sole inventor of the invention as set forth in one or more claims now allowed in Serial No. 11/647,581, the Fraudulent Patent Application, which discloses the entire SeaTrain Invention and subsequent improvements thereon for which Larry Keck is also inventor.

43.     As set forth above, neither Defendant Scher nor Defendant Hu is an inventor or co-inventor of one or more of the now-allowed claims in Serial No. 11/647,581, the Fraudulent Patent Application. None of the Defendants contributed, created, or assisted in inventing the SeaTrain Invention as set forth in one or more of the claims as filed in Serial No. 11/647,581 contained in U.S. Patent No. U.S. 2008/0115992-A1, or the SeaTrain Invention.

44.     As set forth above, Keck Technologies is the sole inventor of the SeaTrain Invention as defined in one or more claims as filed in Serial No. 11/647,581 and in one or more allowed claims in Serial No. 11/647,581. None of the Defendants are an inventor or a co-

inventor of SeaTrain Invention as set forth in one or more allowed claims in Serial No. 11/647,581.

45.    With knowledge that the USPTO is not equipped to address issues of fraud and misappropriation, defendants knowingly continue to seek issuance of a United States patent on Serial No. 11/647,581 wherein one or more allowed claims are an invention of Larry Keck and not an invention of any Defendant applicant named as inventor in Serial No. 11/647,581.

46.    With knowledge that the USPTO is not equipped to identify and address issues of fraud and misappropriation, defendants knowingly continue to seek issuance of a United States patent on Serial No. 11/647,581 to be owned by Defendant Alion wherein one or more allowed claims are the property of Keck Technologies, LLC.

47.    As set forth above, an actual controversy exists between the parties as to the inventorship, ownership and all other rights of the SeaTrain Invention which is contained in Serial No. 11/647,581.

48.    This Court has the authority pursuant to 35 U.S.C. Section 256 to enter an order requiring that the record be corrected at the United States Patent and Trademark Office.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter a declaratory judgment declaring, among other things:

      a.   That Keck Technologies is the sole inventor of Serial No. 11/647,581.

      b.   That none of the Defendants are inventors, co-inventors and rightful assignees of certain ones of the now-allowed claims in Serial No. 11/647,581.

      c.   That Larry Keck is the sole inventor of the SeaTrain Invention as defined in certain of the now-allowed claims in Serial No. 11/647,581.

      d.   That Keck Technologies, LLC has the full right and authority: (1) to take all

actions before the USPTO to withdraw Serial No. 11/647,581, the Fraudulent

Patent Application, from issue; (2) to correct all errors of inventorship and

ownership therein and cancel or amend claims to segregate inventions which

are solely owned by Keck Technologies, LLC from other claims in Serial No.

11/647,581 and/or (3) to prevent Serial No. 11/647,581, the Fraudulent Patent

Application, from ever issuing as a United States Patent.

### COUNT III:
### Breach of Contract (Non-Disclosure Agreement)
### Against Defendant Alion
### Regarding The SeaTrain Invention And The SESACV Invention

49.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1

through 33, above.

50.   This is an action for damages and other relief against Defendant Alion for breach

of the Non-Disclosure Agreement in excess of $75,000, exclusive of interest and costs.

51.   Effective July 7, 2004 and as described above, Defendant Alion executed the

Non-Disclosure Agreement which provide that Defendant may only use the SeaTrain Invention

for limited and narrow scope of "evaluating performance characteristics and feasibility of Keck

Tech's (the DBA of Plaintiff Larry Keck, individually) designs, methods and approaches"

relating to the SeaTrain Invention.

52.   As stated above, Defendant Alion breached the Non-Disclosure Agreement by: i)

the preparation, filing, publication and other communication of the Fraudulent Patent

Application regarding the SeaTrain and related trade secrets; and ii) improperly and illegally

misappropriating, stealing, retaining possession of, confiscating, using and/or disclosing the

SeaTrain Invention and the SESACV Invention and related intellectual property, trade secrets, and proprietary information belonging to Plaintiffs.

53.    As a direct and proximate result of the foregoing, Plaintiffs have suffered and will continue to suffer significant damage, including potential loss of patent rights in numerous countries as well as those damages specifically set forth in the general allegations, above.

54.    Section 10 of the Non-Disclosure Agreement, read in conjunction with Florida law on attorney's fees, provides that if a party breaches either agreement and litigation is filed, the prevailing party will recover their attorney's fees.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant Alion for damages, lost profits, interest, costs, attorney's fees, and such other relief as this Court deems proper.

**COUNT IV:**
**Misappropriation and Publication of Trade Secrets**
**Under Section 688.001, *et seq*., Florida Statutes**
**Against All Defendants Regarding The SeaTrain Invention And The SESACV Invention**

55.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

56.    This is an action against Defendants for misappropriation of trade secrets under Section 688.001, *et seq*., Florida Statutes, in excess of $75,000, exclusive of fees, interest and costs, regarding the SeaTrain and SESACV Inventions.

57.    As described above, the SeaTrain Invention and the SESACV Invention have constituted a trade secret, confidential and/or proprietary information belonging to Plaintiff Keck Technologies subject to protection under Section 688.001, *et seq*., Florida Statutes.

58.   The SeaTrain Invention and the SESACV Invention are both compilations of information that have held independent economic value by not being accessible, through proper means, to competitors such as Defendants, who can profit from explicit, implicit, intentional and/or inevitable use or disclosure thereof.

59.   At all time material to this action, Plaintiffs have taken reasonable measures under the circumstances to maintain the secrecy of the SeaTrain Invention and the SESACV Invention and all related trade secrets.

60.   Each Defendant knows, or has reason to know, of the contractual, statutory and otherwise legal obligations it had and has to Plaintiffs to refrain from misappropriating, improperly using, taking and/or disclosing Plaintiffs' confidential, proprietary, and trade secret information relating to the SeaTrain Invention and the SESACV Invention.

61.   Defendants misappropriated, stole, acquired by fraud and deceit, published and/or misused Plaintiffs SeaTrain Invention and the SESACV Invention and other related trade secrets.

62.   As a direct and proximate result of the foregoing, Plaintiffs have suffered, and will continue to suffer, significant damage including but not limited to potential loss of patent rights in numerous foreign countries.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for damages, lost profits, attorney's fees under Chapter 688.005, Florida Statutes, interest, costs, and such other relief as this Court deems proper.

## COUNT V:
### Action for Fraud and Deceit
### Against All Defendants Regarding The SeaTrain Invention And The SESACV Invention

63.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

64.    This is an action against Defendants for fraud and deceit, in excess of $75,000, exclusive of fees, interest and costs, and regarding the SeaTrain Invention and the SESACV Invention.

65.    As set forth above, Defendants have engaged in various fraudulent, deceitful, illegal and otherwise improper acts, including, but not limited to: i) the preparation, filing, puiblication and/or other communication of the Fraudulent Patent Application regarding the SeaTrain and related trade secrets; and ii) improperly and illegally misappropriating, stealing, retaining possession of, confiscating, using and disclosing the SeaTrain Invention and the SESACV Invention and related intellectual property, trade secrets, and proprietary information belonging to Plaintiffs.

66.    Defendants knowingly intended to injure, defraud and/or deceive Plaintiffs by inducing Plaintiffs to allow Defendants to retain and use Plaintiffs' proprietary and confidential information under an appearance of legitimacy while Defendants were fraudulently misappropriating, stealing and/or illegally using the SeaTrain Invention and/or the SESACV Invention while concealing Defendants' misappropriation, theft and improper use of the SeaTrain Invention and the SESACV Invention.

67.    Defendants intentionally, knowingly and fraudulently used their access and use of confidential and proprietary information describing the SeaTrain Invention and SESACV Invention and related trade secrets in order to steal, misappropriate, confiscate, convert, illegally take possession of, publish and/or otherwise illegally use the SeaTrain Invention and the SESACV Invention and related trade secrets.

68.     Defendants were only able to misappropriate the SeaTrain Invention and the SESACV Invention and related trade secrets via Defendants' intentional and illegal acts of fraud, deception, artifice, dishonesty and/or concealment.

69.     Defendants committed the foregoing fraudulent acts with the intent and purpose of improperly benefiting at the expense of Plaintiffs who (i) reasonably relied upon the integrity of Defendants and who (ii) invested substantial financial resources in order to secure patent rights in the SeaTrain Invention and who (iii) have been willing to provide Defendant Alion preferential license terms under such patent rights so that Alion could advantageously proceed with commercialization of the SeaTrain.

70.     Defendants have in fact improperly benefited from, and continue to make efforts to benefit from, the aforedescribed fraudulent acts at the expense of Plaintiffs.

71.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for damages, lost profits, interest, costs, and such other relief as this Court deems proper.

## COUNT VI:
### Action for Civil Conspiracy
**Against All Defendants Regarding The SeaTrain Invention And The SESACV Invention**

72.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

73.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

74.     This is an action against Defendants for civil conspiracy in excess of $75,000, exclusive of fees, interest and costs, and regarding the SeaTrain Invention and the SESACV Invention.

75.    As set forth above, Defendants conspired to engage in various fraudulent, deceitful, illegal and otherwise improper acts, including, but not limited to: i) the preparation, filing and communication of the Fraudulent Patent Application regarding the SeaTrain and related trade secrets; and ii) improperly and illegally misappropriating, stealing, retaining possession of, confiscating, using, publishing and otherwise disclosing the SeaTrain Invention and the SESACV Invention and related intellectual property, trade secrets, and proprietary information belonging to Plaintiffs.

76.    In furtherance of this conspiracy, Defendants actually engaged in the forgoing acts.

77.    During the time period between 2004 and 2007 Defendants induced Plaintiffs to allow Defendants to have continued access to and use of the SeaTrain Invention and the SESACV Invention while during that time period also having conspired to injure, defraud and/or deceive Plaintiffs wherein Defendants did actually injure, defraud and/or deceive Plaintiffs by misappropriating, stealing and illegally using the SeaTrain Invention and the SESACV Invention; and did conceal Defendants' misappropriation, theft and improper use of the SeaTrain Invention and the SESACV Inventions.

78.    Defendants knowingly intended to injure, defraud and/or deceive Plaintiffs by inducing Plaintiffs to allow Defendants to retain and use Plaintiffs' proprietary and confidential information under an appearance of legitimacy while Defendants were fraudulently misappropriating, stealing and illegally using the SeaTrain and SESACV Inventions; and while concealing Defendants' misappropriation, theft and improper use of the SeaTrain and SESACV Inventions.

79.     Defendants conspired to misappropriate the SeaTrain Invention and the SESACV Inventions and related trade secrets via Defendants' intentional and illegal acts of fraud, deception, artifice, dishonesty and/or concealment.

80.     Defendants conspired to commit the foregoing illegal acts with the intent and purpose of improperly benefiting at the expense of Plaintiffs.

81.     Defendants have in fact improperly and illegally benefited, and continue to make efforts to benefit, from their conspiracy at the expense of Plaintiffs.

82.     As a direct and proximate result of the foregoing conspiracy, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for damages, lost profits, interest, costs, and such other relief as this Court deems proper.

### COUNT VII:
### Violation of Florida's RICO Statute, Section 772, *et seq.*, Florida Statutes
### Against All Defendants Regarding The SeaTrain Invention And The SESACV Invention

83.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

84.     This is an action against Defendants for violation of Florida's RICO Statute, as set forth in Sections 772.01, *et seq.*, Florida Statutes, in excess of $75,000, exclusive of fees, interest and costs, regarding the SeaTrain Invention and the SESACV Invention.

85.     In violation of Sections 772.01, *et seq.*, Florida Statutes, Defendants, with criminal intent, obtained and/or endeavored to obtain and/or receive proceeds directly or indirectly from a pattern of criminal activity in the establishment or operation of an enterprise.

86.     As set forth above, Defendants have engaged in various fraudulent, illegal and otherwise improper acts, including, but not limited to: i) the preparation and filing of the

Fraudulent Patent Application; and ii) improperly and illegally misappropriating, stealing, retaining possession of, confiscating, using and disclosing the SeaTrain Invention and the SESACV Invention and related intellectual property, trade secrets, and proprietary information belonging to Plaintiffs.

87.     Defendants, through the pattern of criminal activity described above, maintained, directly or indirectly, control of and operated an enterprise which continues.

88.     Defendants were associated within this enterprise to conduct or participate, correctly or incorrectly, in a pattern of criminal activity as set forth above.

89.     Defendants intended to injure, defraud and/or deceive Plaintiffs by inducing Plaintiffs to allow Defendants to retain access to and use proprietary and confidential information relating to the SeaTrain Invention and the SESACV Invention and related trade secrets under an appearance of legitimacy while actually fraudulently misappropriating, stealing and illegally using such proprietary and confidential information.

90.     Defendants intentionally used their access to the SeaTrain Invention and the SESACV Invention and related trade secrets in order to steal, misappropriate, confiscate, convert, illegally take possession of, and otherwise illegally use the SeaTrain Invention and the SESACV Invention and related trade secrets.

91.     Defendants were able to misappropriate the SeaTrain Invention and the SESACV Invention and related trade secrets via Defendants intentional and illegal acts of fraud, deception, concealment, stealth, subterfuge, and/or dishonesty.

92.     Defendants committed the foregoing illegal or improper acts with the purpose of improperly benefiting at the expense of Plaintiffs, and have in fact improperly benefited at the expense of Plaintiffs.

93.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged.

94.     Under Section 772.104, Florida Statutes, Plaintiffs are entitled to recover attorney's fees and costs incurred in this action.

WHEREFORE, Plaintiffs respectfully demands judgment against Defendants for damages, interest, costs, and such other relief as this Court deems proper.

### COUNT VIII:
### Violation of Florida's Deceptive and Unfair Trade Practices Act,
### Sections 501.201, *et seq.*, Florida Statutes,
### Against All Defendants Regarding The SeaTrain Invention And The SESACV Invention

95.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

96.     This is an action against Defendants for violation of Florida's Deceptive and Unfair Trade Practices Act, codified in Sections 501.201, *et seq.*, Florida Statutes, in excess of $75,000, exclusive of fees, interest and costs, and regarding the SeaTrain Invention and the SESACV Invention.

97.     As set forth above, Defendants have engaged in various fraudulent, illegal and otherwise improper acts, including, but not limited to: i) the preparation, filing, publication and other communication of the Fraudulent Patent Application regarding the SeaTrain Invention and related trade secrets; and ii) improperly and illegally misappropriating, stealing, retaining possession of, confiscating, using and disclosing the SeaTrain Invention and the SESACV Invention and related intellectual property, trade secrets, and proprietary information belonging to Plaintiffs.

98.     Defendants intended to injure, defraud and/or deceive Plaintiffs by inducing Plaintiffs to allow Defendants to retain access to and use proprietary and confidential

information relating to the SeaTrain Invention and the SESACV Invention and related trade secrets under an appearance of legitimacy while actually fraudulently misappropriating, stealing and illegally using such proprietary and confidential information.

99.   Defendants intentionally used their continued access to the SeaTrain Invention and the SESACV Invention and related trade secrets in order to steal, misappropriate, confiscate, convert, illegally take possession of, and otherwise illegally use the SeaTrain Invention and the SESACV Invention and related trade secrets.

100.   Defendants were able to misappropriate the SeaTrain Invention and the SESACV Invention and related trade secrets via Defendants' intentional and illegal acts of fraud, deception, stealing, concealment, and/or dishonesty.

101.   Defendants committed the foregoing illegal or improper acts with the purpose of improperly benefiting at the expense of Plaintiffs, and have in fact improperly benefited and continue to benefit from such acts at the expense of Plaintiffs.

102.   As a direct and proximate result of the foregoing, Plaintiffs have been damaged.

103.   Under Section 501.2105, Florida Statutes, Plaintiffs are entitled to recover attorney's fees and costs incurred in this action.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for damages, lost profits, interest, costs, and such other relief as this Court deems proper.


### COUNT IX:
### Conversion
### Against Defendants Regarding The SeaTrain Invention And The SESACV Invention

104.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33, above.

105.    This is an action against Defendants for conversion in excess of $75,000, exclusive of fees, interest and costs, regarding the SeaTrain Invention and The SESACV Invention.

106.    As set forth above, Defendants have engaged in various fraudulent, illegal and otherwise improper acts, including, but not limited to: i) the preparation, filing and communication of the Fraudulent Patent Application regarding the SeaTrain and related trade secrets; and ii) improperly and illegally misappropriating, stealing, retaining possession of, confiscating, using and disclosing the SeaTrain Invention and the SESACV Invention and related intellectual property, trade secrets, and proprietary information belonging to Plaintiffs.

107.    Defendants intentionally used their access to the SeaTrain Invention and the SESACV Invention and related trade secrets in order to convert, steal, misappropriate, confiscate, illegally take possession of, and/or otherwise illegally take the SeaTrain Invention and the SESACV Invention and related trade secrets from Plaintiffs.

108.    Defendants were able to convert and illegally take the SeaTrain Invention and the SESACV Invention and related trade secrets from Plaintiffs via Defendants' intentional and illegal acts of fraud, deception, stealing, concealment, and/or dishonesty.

109.    Defendants' conversion of the SeaTrain Invention and the SESACV Invention from Plaintiffs was intended to deprive Plaintiffs of their full right and use of these inventions and trade secrets permanently or indefinitely.

110.    As a direct and proximate result of the forgoing, Plaintiffs have suffered, and will continue to suffer, significant damage.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for damages, lost profits, interest, costs, and such other relief as this Court deems proper.

## COUNT X:
## Unjust Enrichment
## Against All Defendants Regarding SeaTrain Invention And The SESACV Invention

111.    The allegations of paragraphs 1 through 33 are incorporated herein by reference.

112.    This is an action against Defendants for unjust enrichment in excess of $75,000, exclusive of interest and costs.

113.    As described above, Plaintiffs are the sole owners of the SeaTrain Invention and the SESACV Invention and related trade secrets.

114.    Defendants misappropriated, stole, or acquired by fraud and deceit, misused, and/or improperly retained possession of Plaintiffs SeaTrain Invention and the SESACV Invention and other related trade secrets.

115.    Plaintiffs unknowingly and involuntarily conferred a benefit upon Defendants in that Defendants misappropriated and misused the SeaTrain Invention and the SESACV Invention and trade secrets to generate revenues and profits, obtain contracts, perform contracts, and otherwise benefit at the expense of Plaintiffs.

116.    Defendants knowingly and voluntarily retained benefits by using Plaintiffs' trade secrets relating to the SeaTrain Invention and the SESACV Invention.

117.    Based upon the circumstances surrounding Defendants' theft, misappropriation and otherwise misuse of the trade secrets, it would be inequitable for Defendants to retain the benefits of their prior and further use of the SeaTrain Invention and the  SESACV Invention and related trade secrets, confidential and/or proprietary information without paying the value for them to Plaintiffs.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for damages,

lost profits, interest, costs, and such other relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury.

Respectfully submitted this _____ **/ 3** _____ day of April 2010.

John Y. Benford, Esquire
Florida Bar No. 51950
Gregory K. Mausser
Florida Bar No. 0845884

**Benford Gluckman, PL**
Wachovia Tower
20 North Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone: (407) 956-1010
Facsimile: (407) 956-1005
JYB@BenfordGluckman.com
Attorneys for Plaintiffs